No. 97,401

STATE OF KANSAS, *Appellant*, v. KENNETH R. SKOLAUT, *Appellee*.

(182 P.3d 1231)

Opinion filed May 16, 2008.

*Boyd K. Isherwood*, assistant district attorney, argued the cause, and *Nola Tedesco Foulston*, district attorney, and *Paul J. Morrison*, attorney general, were with him on the brief for appellant.

*Alice C. White*, of Paul E. Wilson Defender Project, argued the cause and was on the briefs for appellee.

The opinion of the court was delivered by

NUSS, J.: The district court refused to consider, for any probation-related purpose, Kenneth Skolaut's conduct occurring after his probation term but during the pendency of probation violation proceedings under K.S.A. 22-3716. The State appealed the ruling on a question reserved which the Court of Appeals dismissed, apparently for lack of jurisdiction. We granted the State's petition for review to consider two issues. Those issues, and our accompanying holdings, are as follows:

1. Did the Court of Appeals err in dismissing the State's appeal? Yes.

2. For purposes of determining probation violations, may a district court consider a defendant's conduct that occurred after the probation term but during the pendency of probation violation proceedings under K.S.A. 22-3716? No.

Accordingly, the State's appeal on a question reserved is reinstated, and the appeal is sustained in part and denied in part.

## FACTS

The facts, and resultant arguments, are best understood when presented in the following chronology:

January 27, 2005: Kenneth R. Skolaut was convicted of felony driving under the influence (DUI), possession of methamphetamine, possession of marijuana, and driving while suspended.

April 8, 2005: Skolaut was sentenced to an underlying term of 15 months in prison but granted 12 months' probation.

February/March 2006: Skolaut violated conditions of his probation. Specifically, he failed to report as directed, failed to report change of address and telephone number as directed, and failed to make payments as directed.

April 8, 2006: Skolaut's 12 months' probation was scheduled to terminate.

April 19, 2006: At the request of Lesia Hedgepeth, Skolaut's probation officer, the district court issued a probation violation warrant alleging Skolaut's violations that had occurred before the end of the probation term: February/March 2006.

May 9, 2006: End of the 30-day period after probation was scheduled to terminate during which time the district court was authorized to issue a probation violation warrant under K.S.A. 22-3716(a).

June 28, 2006: During a traffic stop, Skolaut was arrested on the probation violation warrant.

June 30, 2006: At the request of Hedgepeth, the district court issued a second probation violation warrant, alleging the June 28 events were additional violations. Specifically, Skolaut allegedly

failed to provide proof of insurance, failed to yield on a left turn, and drove without possession of a license.

August 23, 2006: During Skolaut's probation violation hearing, he admitted the violations occurring during the initial probation term: February/March 2006. Accordingly, the State requested that the court revoke his probation and impose the underlying prison sentence. The hearing was continued for 1 week to allow the parties to research whether the June 28 events, although occurring after the initial probation term, could nevertheless also be considered by the district court.

August 31, 2006: The district court found that it had erred in issuing the second warrant because it was prohibited from considering the June 28 events due to their occurring after the initial term of probation. It therefore set aside the warrant:

"The reason the second warrant, in my opinion, is not valid is because it doesn't address an allegation that occurred during the initial term of probation. If the warrant had addressed an additional allegation that had occurred during the initial term of probation, that second warrant generally can be considered. . . . [B]ecause the second warrant addresses allegations that occurred post April 8th, 2006, it's not valid."

The court refused to consider the June 28 events either for determining probation condition violations or for dispositional purposes. After acknowledging Skolaut's admission of the violations for his February/March conduct, it decided to "reinstate your probation for a period of six months from today under the same terms and conditions."

The State filed a timely notice of appeal on a question reserved under K.S.A. 22-3602(b)(3). After the State's response to the Court of Appeals' order to show cause, the court dismissed the appeal.

## ANALYSIS

Issue 1: *The Court of Appeals erred in dismissing the appeal.*

The State argues that when the Court of Appeals determined whether it had jurisdiction to hear the State's appeal, that court apparently misread our holding, and misapplied our test, in *State v. Tremble*, 279 Kan. 391, 109 P.3d 1188 (2005). Skolaut basically responds that the court apparently instead believed that the State's

issue was adequately addressed by existing case law. As a result, there was no reason to decide the question reserved.

The precise reason for the Court of Appeals' dismissal of the appeal is unclear. The State's response to the order to show cause simply shows a hand-written "Appeal Dismissed" together with a date and signature of the Chief Judge. However, the earlier show cause order issued by that court provides some clues to the ultimate dismissal. That order states in relevant part:

"Based on the record on file in the office of the Clerk of the Appellate Court and the briefs of the parties, it does not appear this court has jurisdiction under K.S.A. 2006 Supp. 22-3602(b)(3). Jurisdiction over appeals by the prosecution on a question reserved are not entertained simply to demonstrate trial court errors which are adverse to the State or *because a decision would be helpful precedent.* See *State v. Tremble,* 279 Kan. 391, 393, 109 P.3d 1188 (2005). Instead, questions reserved by the prosecution must present issues of statewide interest important to the correct and uniform administration of criminal law. *State v. Mountjoy,* 257 Kan. 163, 167-68, 891 P.2d 376 (1995). The State's brief fails to allege or establish how the issue presented in this appeal poses a question of statewide importance." (Emphasis added.)

The State responded to this show cause order, stating in relevant part:

"4. As for this court's assertion that '[j]urisdiction over appeals by the prosecution on a question reserved are not entertained . . . because a decision would be helpful precedent,' the State would respectfully submit that this court's interpretation of *State v. Tremble,* 279 Kan. 391, 109 P.3d 1188 (2005), is in error. *The resolution of whether the question presented by the State's appeal would provide helpful precedent is an integral part of determining whether a court should entertain a question reserved.*

. . . .

"5. The State also respectfully disagrees with this court's findings that '[t]he State's brief fails to allege or establish how the issue presented poses a question of statewide importance.' First, the State's brief specifically concluded 'The State respectfully requests this court resolve the question posed herein favorably to the State's position in that *the same would aid in the correct and uniform administration of criminal law in future cases.*' Second, the fact a matter of 'statewide importance' is at play is also the undercurrent of the entire brief on appeal, in that *no appellate decision addresses the questions posed, nor can district courts turn to the plain language of the controlling statutory provision for guidance.*

"6. If jurisdiction is denied in this case, then the questions posed herein will go unanswered and future courts facing similar issues will be left to guess at what to

do; *which in no way would lead 'to the correct and uniform administration of criminal law.' "* (Emphasis added.)

Upon receipt of the State's response, the court dismissed the appeal.

We begin our analysis by examining K.S.A. 22-3602(b)(3), which governs questions reserved. It states: "Appeals to the court of appeals may be taken by the prosecution from cases before a district judge as a matter of right in the following cases, and no others: . . . (3) upon a question reserved by the prosecution."

Our decision in *Tremble*, 279 Kan. at 393, elaborates upon when an appeal on a question reserved by the prosecution may be taken:

"K.S.A. 2003 Supp. 22-3602(b)(3) provides that the prosecution can appeal upon a question reserved. Such an appeal is permitted to allow the prosecution to obtain review of a trial court's adverse ruling on a legal issue of statewide interest that is important to the correct and uniform administration of criminal justice. . . .

"In *State v. Woodling,* 264 Kan. 684, 687, 957 P.2d 398 (1998), we held:

' "Questions reserved by the State in a criminal prosecution, under K.S.A. 22-3602(b) [Furse], will not be entertained on appeal merely to demonstrate whether error has been committed by the trial court. . . . Generally, this court has accepted appeals on questions reserved by the State where the appeals involve questions of statewide interest important to the correct and uniform administration of the criminal law and the interpretation of statutes." [Citations omitted.]

' "We have uniformly *declined* to entertain questions reserved in which the resolution of the question would *not* provide helpful precedent." [Citations omitted.]' " (Emphasis added.)

See, *e.g.*, *State v. Mountjoy,* 257 Kan. 163, 168, 891 P.2d 376 (1995) ("We have uniformly declined to entertain questions reserved, the resolution of which would not provide helpful precedent."); *State v. Leonard,* 248 Kan. 427, 433, 807 P.2d 81 (1991) ("Resolution of this issue [on a question reserved] will not provide a helpful precedent; therefore, we do not entertain it.").

After the *Tremble* court identified its considerations for accepting appeals on questions reserved, it then addressed resolution of its specific issue:

"We turn . . . to the issue of whether the issues reserved herein are matters of statewide interest important to the correct and uniform administration of the criminal law and the interpretation of statutes. *Would resolution of the questions*

*provide helpful precedent?* We conclude the issues herein fail every facet of these tests." (Emphasis added.) 279 Kan. at 394.

*Tremble's* consolidated approach to the question was slightly abbreviated in *State v. Price*: "We find nothing in this case which would provide helpful precedent to the bench, bar, or law enforcement personnel throughout this state. The State's appeal [on a question reserved] is therefore denied." 247 Kan. 100, 104, 795 P.2d 57 (1990).

Based upon this language in *Tremble* and *Price,* we conclude that the Court of Appeals' articulation of its standards for whether to accept an appeal of a question reserved is too limiting. We reiterate that appellate courts will accept appeal of questions reserved when the issues are "matters of statewide interest important to the correct and uniform administration of the criminal law and the interpretation of statutes," but will not consider cases in which the "resolution of the question would not provide helpful precedent." *Tremble,* 279 Kan. at 394.

Jurisdiction typically is a question of law subject to unlimited review. *State v. Johnson,* 283 Kan. 649, Syl. ¶ 2, 156 P.3d 596 (2007). Even if one argues that whether to accept appeal on a question reserved is a discretionary decision, our review would still be unlimited because the Court of Appeals proceeded under incomplete, and therefore erroneous, legal conclusions. This court has said that "even abuse of discretion standards can sometimes more accurately be characterized as questions of law requiring de novo review." *State v. White,* 279 Kan. 326, 332, 109 P.3d 1199 (2005). As we explained in *White:*

" 'Little turns, however, on whether we label review of this particular question abuse of discretion or de novo, for an abuse-of-discretion standard does not mean a mistake of law is beyond appellate correction. A district court by definition abuses its discretion when it makes an error of law. . . . The abuse-of-discretion standard includes review to determine that the discretion was not guided by *erroneous legal conclusions.*' " (Emphasis added.) 279 Kan. at 332 (quoting *Koon v. United States,* 518 U.S. 81, 100, 135 L. Ed. 2d 392, 116 S. Ct. 2035 [1996]).

We further conclude that if the Court of Appeals had proceeded under the correct legal conclusions, it then should have exercised its jurisdiction and granted the State's appeal on this particular

question reserved. The answer to that question—whether conduct occurring after the initial term of probation, and after a timely filed warrant has been issued, can be considered by the district court for any purpose—would, in the shorthand of *Price*, "provide helpful precedent to the bench, bar, or law enforcement personnel throughout this state." 247 Kan. at 104. As support, we observe that during the hearing, the district court opined that this particular scenario is likely presented to district courts fairly often. Similarly, in *State v. Schulze*, this court exercised jurisdiction on a question reserved of "whether a trial judge can modify probation by deleting or changing restitution and the procedure to follow." 267 Kan. 749, 751, 985 P.2d 1169 (1999).

Accordingly, we reinstate the State's appeal and proceed to a resolution on the merits of the question reserved.

*Issue 2: For purposes of determining probation violations, the district court may not consider conduct that occurred after the probation term but during the pendency of probation violation proceedings under K.S.A. 22-3716.*

There is no dispute that the first warrant was properly and timely filed for alleged violations occurring during the initial probationary term, even though the warrant was filed after the term was to end. See K.S.A. 22-3716(d) ("The court shall have 30 days following the date probation . . . was to end to issue a warrant for the arrest or notice to appear for the defendant to answer a charge of a violation of the conditions of probation."). The State interprets 22-3716, however, to conclude that the timely filed warrant grants the district court continuing jurisdiction over probationers for all purposes during the pendency of the probation violation proceedings. According to the State, the court therefore may certainly consider any violations that occur *after* the initial term of probation. The State's position represents one end of the continuum: the offending conduct may be considered for what the State characterizes as "revocational" purposes. If not, it argues that at a minimum the conduct may be considered for what it characterizes as "dispositional" purposes.

Skolaut responds that continuing the district court's jurisdiction by the filing of the warrant and requiring probationers to follow the probationary conditions through the violation hearing is not supported by the plain language of 22-3716. He argues the midpoint of the continuum: while the later offending conduct could not be used for what he agrees are "revocational" purposes, within the district court's discretion it could be used for what he agrees are "dispositional" purposes.

The district court's ruling represents the opposite end of the continuum from the State. It held as a matter of law that the later offending conduct could not be used for any purposes.

The resolution of this issue requires an interpretation of K.S.A. 22-3716. Interpretation of a statute is a question of law subject to unlimited review. *Abasolo v. State*, 284 Kan. 299, 303, 160 P.3d 471 (2007).

Before beginning that particular analysis, however, we must clarify some terms used by the parties on appeal, *e.g.*, "revocation," "disposition," and their variants. We will examine language from decisions of the United States Supreme Court and this court, as well as the language of the applicable statute.

In *Black v. Romano*, the Court recognized two distinct stages in the area of probation revocation:

"In identifying the procedural requirements of due process, we have observed that the decision to revoke probation typically involves two distinct components: (1) a retrospective factual question *whether the probationer has violated a condition of probation*; and (2) a discretionary determination by the sentencing authority *whether violation of a condition warrants revocation of probation.* See *Gagnon [v. Scarpelli*, 411 U.S. 778, 784, 36 L. Ed. 2d 656, 93 S. Ct. 1756 (1973).]" (Emphasis added.) 471 U.S. 606, 611, 85 L. Ed. 2d 636, 105 S. Ct. 2254 (1985).

See *State v. Walker*, 260 Kan. 803, 808, 926 P.2d 218 (1996) (A probationer may not have his or her probation revoked unless it is made to appear that the probationer has failed to comply with the conditions of probation. Revocation is in the sound discretion of the district court.).

K.S.A. 22-3716(b) reflects this multi-stage approach. It first provides that after the defendant's arrest and detention pursuant to a probation violation warrant, the court services officer or commu-

nity correctional services officer shall immediately notify the court and submit a written report showing in what manner the defendant has violated his or her probation conditions. As the next step, "the court shall cause the defendant to be brought before it without unnecessary delay for a hearing on the violation charged." As a subsequent step,

"[e]xcept as otherwise provided, [1] *if the violation is established,* [2] the court may continue or revoke the probation, assignment to a community correctional services program, suspension of sentence or nonprison sanction and may require the defendant to serve the sentence imposed, or any lesser sentence, and, if imposition of sentence was suspended, may impose any sentence which might originally have been imposed." (Emphasis added.) K.S.A. 22-3716(b).

While the violation stage, *i.e.,* guilt determination, is separate from the revocation stage, *i.e.,* penalty determination, the statute makes clear that revocation is merely one type of disposition available. For example, the statutory language distinguishes "continuing" probation from "revoking" probation and distinguishes continuing sentence suspension from revoking sentence suspension. And, as we stated in *Walker,* 260 Kan. at 809:

"Where, as here, there is discretion to continue or revoke probation, the 'probationer is entitled to an opportunity to show not only that [1] he did not violate the conditions, but also that [2] there was a justifiable excuse for any violation or that [3] revocation is not the appropriate *disposition.*'" (Emphasis added.) (Citing *Black v. Romano,* 471 U.S. at 612, which in turn cited *Gagnon v. Scarpelli,* 411 U.S. 778, 789, 36 L. Ed. 2d 656, 93 S. Ct. 1756 [1973].)

The correct distinctions between "violation" and "disposition" are also reflected in the 2007 Kansas Sentencing Guidelines Journal Entry of Probation Revocation Hearing. "Section III: Disposition, 1. Disposition:" includes, *inter alia,* "probation not revoked; probation revoked and reinstated; probation extended for ___ months; probation revoked, defendant ordered to serve . . . original sentence; assigned to Conservation Camp." The Sedgwick County District Court form used by the court in the instant case also reflects this format: the "Journal Entry of Probation Violation Hearing" provides a "Section III. Disposition." The district court completed this section by providing: "Probation revoked and reinstated under the same and the following modified

conditions. Probation extended for 6 months from 8/31/06." Indeed, the district court held that once Skolaut admitted violating the probation conditions, "[t]hat puts us at a disposition stage as far as this probation violation." Arguments at the district court confirm these same distinctions: after Skolaut's admitted violations, the State and probation officer then argued for "revocation and imposition of sentence," while Skolaut argued for revocation tempered by reinstatement of probation.

Accordingly, despite the characterizations of the parties on appeal, the most accurate description calls for recognition of the proceedings as containing two stages: (1) violation stage which, if a violation is established, proceeds to the (2) disposition stage, of which revocation may be a part.

With this clarification in mind, we begin our analysis with a review of the statutes and the parties' arguments. K.S.A. 22-3716(a) states in relevant part:

"At any time *during probation*, assignment to a community correctional services program, suspension of sentence or pursuant to subsection (d) for defendants who committed a crime prior to July 1, 1993, and at any time during which a defendant is serving a nonprison sanction for a crime committed on or after July 1, 1993, or pursuant to subsection (d), the court may issue a warrant for the arrest of a defendant for violation of any of the conditions of release or assignment." (Emphasis added.)

As mentioned, subparagraph (d) provides that a probation violation warrant may be validly issued within 30 days after the date probation was to end:

*"The court shall have 30 days following the date probation,* assignment to a community correctional service program, suspension of sentence or a nonprison sanction *was to end to issue a warrant for the arrest or notice to appear for the defendant to answer a charge of a violation of the conditions of probation,* assignment to a community correctional service program, suspension of sentence or a nonprison sanction." (Emphasis added.)

Skolaut first relies upon the italicized language in subsections (a) and (d) to support his argument that only violations of probation conditions that occurred during the initial term can be considered by the district court. He reminds us that

" ' "[t]he general rule is that a criminal statute must be strictly construed in favor of the accused, which simply means that words are given their ordinary meaning. Any reasonable doubt about the meaning is decided in favor of anyone subjected to the criminal statute. This rule of strict construction, however, is subordinate to the rule that judicial interpretation must be reasonable and sensible to effect legislative design and intent." . . . [Citation omitted.]' " *Abasolo*, 284 Kan. at 303.

Toward this end, Skolaut notes the complete absence of any statutory language suggesting that the issuance of the violation warrant extends probationary conditions through the probation violation proceedings. *Cf. State v. Gary,* 282 Kan. 232, 238, 144 P.3d 634 (2006) (no indication from language in K.S.A. 21-4610 that the authorized probationary conditions "may also be contingent upon behavior prior to sentencing").

Skolaut also relies upon *State v. Gordon,* 275 Kan. 393, 66 P.3d 903 (2003). There, this court explained that the 30-day window in subsection (d) was added by the legislature in 1990 in response to an unpublished Court of Appeals decision holding that the plain language of K.S.A. 22-3716 prevented the district court from exercising jurisdiction over a probationer once the term of probation had ended. In *Gordon* we stated:

"The plain language of K.S.A. 2002 Supp. 22-3716(d) grants the court 30 days following the date probation ended to issue a warrant for the arrest or notice to appear for the defendant to answer a charge of a *violation of the conditions of probation.*" (Emphasis added.) 275 Kan. at 399.

Among other things, we also examined testimony before the House Judiciary Committee concerning the addition of the 30-day window and held:

"The [Court of Appeals'] *Arnold* decision and the testimony of Judge Buchele [before the judiciary committee] concerning the 30-day period strongly suggest that the legislature was concerned that defendants serving their last days of probation would have less of an incentive to strictly follow their probation rules knowing that any violations would require the preparation and filing of documents with the court before the termination of the probation period. When this concern is considered with the plain language of K.S.A. 2002 Supp. 22-3716(d), it becomes clear that the legislature intended by its language to grant the court an additional 30 days after probation ended to initiate probation revocations [*sic*] proceedings *based upon violations of conditions occurring within the probationary period.*" (Emphasis added.) 275 Kan. at 399.

The State responds to Skolaut's arguments by citing *State v. Rocha*, 30 Kan. App. 2d 817, 48 P.3d 683 (2002), and *State v. Williams*, 20 Kan. App. 2d 142, 884 P.2d 743 (1994), as support. It claims these two cases indicate that probation revocation may occur after the initial term of probation upon a timely filed amended or second motion to revoke probation where an original motion continued the district court's jurisdiction over the defendant. *Rocha* and *Williams* do not support this argument, however, because in both cases the alleged incidents occurred during the initial probationary term. Additionally, the amended or second motions were not timely filed, so the subsequent offenses could not be considered by the district court. *Rocha* and *Williams* merely stand for the proposition that revocation may occur after probation ends as long as a warrant, petition, or show cause order has been filed prior to or within 30 days after the expiration of the probationary term. *Rocha*, 30 Kan. App. 2d at 820; *Williams*, 20 Kan. App. 2d at 147. Neither case suggests that conduct occurring after the probationary term may be considered by the district court.

Although the State cites *Rocha* and *Williams*, it does not so much argue by reason of its authorities as it argues "by the authority of its reason." In short, it contends that the district court must retain jurisdiction over the probationer for all purposes once a violation warrant becomes pending because any other reading of K.S.A. 22-3716 would be absurd. According to the State, while Skolaut concedes that the warrant provides the district court with jurisdiction over his *probation* until revocation, it is illogical for him to argue that the court does not also simultaneously have jurisdiction over his *conduct*.

Our decision in *Gary* is of guidance on whether conduct occurring outside the probationary term can be considered in making probation violation determinations. 282 Kan. 232. There, this court looked at whether probation could be revoked based upon conduct that occurred 3 days before Gary was put on probation. The facts reveal that Gary entered into a plea agreement for a forgery that he committed in July 2003. On May 25, 2004, he was sentenced to prison but placed on probation for 18 months. Two weeks later, he was charged with attempted robbery, which had allegedly oc-

curred on May 22, 2004—3 days before he was granted probation. The district court essentially found the attempted robbery was a probation violation, revoked probation, and imposed the underlying sentence of 11 months' imprisonment.

On appeal, Gary argued that the attempted robbery occurred outside the probationary period and the district court was therefore barred from considering it. The State responded that the court did not abuse its discretion in revoking probation. This court rejected the State's suggested standard of review, instead holding that the determination was a question of law. We pointed in part to this court's earlier language in *Swope v. Musser*, 223 Kan. 133, 137, 573 P.2d 587 (1977): " 'A *probationer may not have his probation revoked unless it is made to appear that he has failed to comply with the terms and conditions of his probation.*' " *Gary*, 282 Kan. at 238. We also reiterated the Court of Appeals holding that " 'there were simply no [probation] terms in place when Gary allegedly committed the attempted robbery.' " 282 Kan. at 238.

In response to the State's argument in *Gary*, similar to the one it makes in the instant case, that "it 'seem[ed] to defy common sense' to prevent the revocation," this court emphasized that

"because this issue is jurisdictional in that it goes to the power of the district court to revoke probation, the argument that a particular result seems to defy common sense is not persuasive. As the Court of Appeals explained below, 'the undesirability of a result does not allow us to craft language onto a statute that is not already there.' [*State v. Gary*,] 34 Kan. App. 2d [599,] 602[, 121 P.3d 1000 (2005)]. Thus, any discontent relating to the district court's jurisdiction in this matter should be brought before the legislature, not the courts." 282 Kan. at 241.

The question presently before us is analogous to the one in *Gary*. There, the defendant's conduct occurred before the probationary term began; here, it occurred after the term ended. While the present warrant was issued after the term was to end on April 8, it only covered violations that occurred during the term. After April 8, there simply were no conditions of probation for Skolaut to violate because he was not on probation at that time.

Our conclusion is not only supported by Kansas case law but also by other authorities. In 2 Cohen, The Law of Probation and Parole, § 18:19 (2d ed. 1999), the author states: "[C]onduct occurring after

the end of the probation or parole term cannot serve as the basis of a revocation. The rationale is that the offender did not breach a condition because no such condition was in effect at the time of the wrongful acts."

The treatise cites, *inter alia, United States v. Levitt,* 799 F.2d 505 (9th Cir. 1986) (acts which allegedly violated the terms of probation occurred after the probation period and district court lacked jurisdiction to revoke probation and to impose sentence); *Jess v. State, 384 So. 2d 328 (Fla. Dist. App. 1980) (State conceded that the burglary was not a proper basis for revocation because it was committed after defendant's term of probation had already expired 5 months earlier); Nicklas v. State,* 530 S.W.2d 537 (Tex. Crim. 1975) (lack of authority of trial court to revoke when the offense serving as the basis for revocation occurred after expiration of the probationary period).

In a case not cited in the treatise, *Patuxent v. Hancock,* 329 Md. 556, 576-77, 620 A.2d 917 (1993), Maryland's highest court summarized its state's case law to conclude that revocation of probation must be based upon conduct actually occurring during the probationary period: subsequent to the grant of probation but prior to its expiration. The *Hancock* court, like this court in *Gary,* observed that revocation cannot be based upon pre-probation conduct. It therefore appeared to use that prohibition as an analogue and as one of its reasons for prohibiting *post*-probationary conduct as a consideration for revocation.

Several courts have rejected the specific argument that certain State action, *e.g.,* filing warrants for violations of probation conditions, tolls the probation period or otherwise extends the court's jurisdiction over all of the defendant's conduct through the violation hearing. For example, in *United States v. Paden,* the court held that it lacked jurisdiction to revoke probation where conduct forming the basis for revocation occurred 2 months after the maximum period of probation had expired. It ruled that the issuance of a bench warrant for an earlier violation of probation did not toll the period to allow inclusion of the new conduct. 558 F. Supp. 636 (D.D.C. 1983). Similarly, in *Hunter v. State,* the court stated:

"A motion to revoke and capias do not toll the running of the probationary period. [Citations omitted.] The probation continues to run and may, in fact, expire. The timely filing of a motion to revoke and issuance of a capias will preserve only those alleged violations contained therein, and will permit revocation on that basis even after the probationary period has expired." 640 S.W.2d 656, 659 (Tex. App. 1982).

A plain reading of our statute, combined with the weight of authority from Kansas and other jurisdictions, leads to the conclusion that Skolaut's post-probationary-period conduct cannot be considered by the court during the violation stage of the proceedings. If a violation of his conditions of probation is established, however, we see no reason why his offending conduct cannot then be considered by the court during the disposition stage as part of the district court's discretion. See, *e.g., Walker*, 260 Kan. at 808.

The State's appeal on a question reserved is sustained in part and denied in part.