NOT DESIGNATED FOR PUBLICATION

No. 114,043

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

KENNY R. WRIGHT, JR.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; TERRY L. PULLMAN, judge. Opinion filed July 1, 2016. Affirmed.

*Kimberly Streit Vogelsberg*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before LEBEN, P.J., STANDRIDGE and ARNOLD-BURGER, JJ.

*Per Curiam*:  Kenny R. Wright, Jr., appeals the revocation of his probation, alleging that the district court abused its discretion by denying his reinstatement request. Based upon our thorough review of the record and the parties' briefs, we disagree and affirm the district court's decision.

1

Wright pled guilty, pursuant to plea negotiations, to one count of aggravated robbery. The district court followed the terms of the plea agreement and imposed a dispositional departure sentence of 36 months' probation with an underlying prison term of 100 months. In granting Wright's departure request, however, the district judge noted that because of Wright's criminal history and the nature of his crime, he was "going to designate [his] case [as] zero tolerance for any probation violation involving a crime of violence or . . . of illegal use or possession of weapons."

Approximately 8 months later, however, the State moved to revoke Wright's probation because, according to his Intensive Supervision Officer (ISO), Wright violated the terms thereof by associating with known gang members, failing to abide by gang conditions, violating his curfew, and submitting untruthful reports to his ISO.

Following a hearing, the district court revoked, reinstated, and extended Wright's probation for 36 months, under the supervision of the Residential Community Corrections Program. The district judge informed Wright that if he were older than 18, he would "probably have very little hesitation to send [him] to prison," but due to his youth, he had opted to give him another chance to succeed on probation with the proviso that his case would be designated as zero tolerance for association with gang members, violation of gang conditions, and any acts or crimes of violence.

Nevertheless, 5 months later, the State again moved to revoke Wright's probation due to several alleged violations, including: failing to abide by various gang conditions and being out of place of assignment. At the subsequently held revocation hearing, the district judge deferred to the recommendations of Wright's ISO, who believed that Wright was still "salvageable," and he revoked and reinstated Wright's probation with the imposition of a 30-day jail sanction.

Seven months later, the State yet again moved to revoke Wright's probation for gang condition violations. Consequently, the district court held another revocation hearing, and after hearing some background on the violations from the parties, the district judge revoked, reinstated, and extended Wright's probation for 36 months with the imposition of a 60-day jail sanction.

A little over 1 year later, Wright voluntarily agreed to serve a 48-hour jail sanction after he committed the new offense of speeding and driving without a valid driver's license and failed to notify his ISO of his contact with law enforcement. Just a few weeks later, the State moved to revoke Wright's probation because his ISO reported that he failed to comply with his curfew and he committed the offenses of possession of marijuana, possession of a firearm by a felon, interference with law enforcement, and driving while suspended. He subsequently pled guilty to possession of a firearm by a felon.

In April 2015, the district court revoked Wright's probation for commission of a new crime. Although the State and Wright's ISO both contended that Wright was "a public safety risk and not amenable to probation," Wright requested reinstatement with a 120-day jail sanction because "although he'[d] had missteps, [he had] bettered himself, his family." In particular, Wright noted that he was employed as a manager at Burger King, he had paid on his fines, he had a young daughter that needed him, and he had come a long way in removing himself from the gang lifestyle. Additionally, Wright explained that he was only 20-years-old and "probably not as mature and clear thinking as he should be," which was evidenced by the fact that his probation violation arose from his "egregious mistake of agreeing to go with a friend to a nightclub to blow off steam" following a death in the family. Wright further explained that he was not a threat to the community because he did not fire the gun and while he told law enforcement that the gun belonged to him to protect his friend, in actuality, he did not know there was a gun in the vehicle.

3

After considering the parties' arguments, the district court found that Wright was no longer a suitable candidate for probation; consequently, the court denied Wright's request for reinstatement and ordered him to serve his underlying sentence. The district judge explained, after referencing the numerous previous occasions when Wright had violated his probation and been reinstated:

"I have people stand in front of me all the time, Mr. Wright, and tell me they've learned their lesson, they will change, they have changed, they are no longer a threat. But I also have the objective facts in front of me where they are maintaining a life-style, they are maintaining gang affiliation, they are maintaining gang actions, they are maintaining gang connections.

"And probably of all the probation violations you've done before, the most serious to me is this current one that you pled guilty to possession of a firearm. You didn't do a *Brady* plea to take advantage of a plea offer. You pled guilty to a possession of firearm charge. That raises to me great consideration for public safety, despite the fact that from the get-go you knew you had a hundred month prison sentence hanging over your head. That despite from the very start you've been given numerous chances and told repeatedly that this is your last chance, that was your last chance, again, this would be your last chance. Sometimes that actually happens. That time is now.

"I'm going to find the public safety considerations outweigh the reformation and rehabilitation possibilities in this case by virtue of your own demonstrated actions."

Wright subsequently filed this timely appeal.

ANALYSIS

Wright contends the district court abused its discretion by refusing to reinstate his probation and ordering him to serve his underlying sentence.

The district court has two considerations when presiding over a probation revocation hearing:  (1) the factual question whether the probationer has violated a

4

condition of the probation and (2) the discretionary determination of whether the established violation warrants the revocation of probation. *State v. Skolaut*, 286 Kan. 219, 227, 182 P.3d 1231 (2008). Once the State has proven a violation of the conditions of probation, revocation is within the sound discretion of the district court. *State v. Gumfory*, 281 Kan. 1168, 1170, 135 P.3d 1191 (2006). A judicial action constitutes an abuse of discretion if the action is (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact. *State v. Mosher*, 299 Kan. 1, 3, 319 P.3d 1253 (2014).

Wright admitted that while he was on probation for this offense he committed a new crime—criminal possession of a firearm. So there is no dispute that he violated a condition of probation. In addition, because he committed a new offense, the court is not require to impose any of the alternative sanctions required in K.S.A. 2015 Supp. 22-3716. See K.S.A. 2015 Supp. 22-3716(c)(8). And Wright does not contend that an alternative sanction was required. Wright claims that the district court's refusal to reinstate his probation was arbitrary, fanciful, or unreasonable because the mitigating factors he cited at the revocation hearing, *i.e.*, he did not pose a threat to public safety, he had obtained employment as a restaurant manager, he had made payments towards his fines, he was young and immature, he was an important part of his young daughter's life, and he had made progress towards removing himself from the gang lifestyle, clearly outweighed the reasons the court gave for revoking his probation.

However, as the State asserts, the district court did not abuse its discretion when it revoked Wright's probation because Wright "came before the district court on four different occasions for failing to abide by probation conditions" and despite Wright's attempt to mitigate his behavior, "[p]rison was the logical and warranted alternative." In fact, the district court afforded Wright leniency in granting him probation at sentencing and in providing him with three opportunities to reform his behavior and successfully complete his probation. But Wright squandered his opportunity to avoid incarceration by

5

repeatedly ignoring the district judge's warnings. Consequently, Wright's conduct demonstrates that he was not amenable to probation, and under these circumstances, it cannot be said that no reasonable person would have ordered Wright to serve his underlying sentence.

Affirmed.