NOT DESIGNATED FOR PUBLICATION

No. 114,654

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CRYSTAL ROSS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; BENJAMIN L. BURGESS, judge. Opinion filed November 4, 2016. Affirmed.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., LEBEN and GARDNER, JJ.

*Per Curiam*:  Crystal Ross appeals the district court's revocation of her probation. Specifically, Ross alleges that the district court erred when it bypassed the intermediate nonprison sanctions set forth in K.S.A. 2015 Supp. 22-3716 because the court did not make the requisite particularized findings for such an action. In the alternative, Ross claims that the district court abused its discretion by denying her request for an alternative disposition. Based upon our thorough review of the record, however, we disagree and affirm the district court's decision.

1

*Factual and Procedural Background*

After Ross drove a vehicle with a blood alcohol level of approximately .28, an act which resulted in the death of her 6-year-old son, Ross pled guilty to one count each of involuntary manslaughter while driving under the influence, driving while suspended, and no proof of insurance. The district court, consistent with the terms of the parties' plea agreement, imposed a dispositional departure sentence of 36 months' probation with an underlying controlling prison term of 43 months. In granting Ross' departure request, the district judge noted that due to the serious nature of her crimes, he was going to designate her case as "zero tolerance with no exceptions for any probation violations of any sort," explaining:

"So the bottom line is, I understand the circumstances. I will grant the recommendations of the parties, grant the dispositional departure based upon it being a joint recommendation. But I want to let you know that I concur with [the prosecutor]. This is an opportunity that you're going to be given, but there's no room for leniency after today. If you have any driving infraction of any kind, that's a violation of your probation conditions. But one of those conditions is that you'll obey the laws of the United States, the State of Kansas, and any other jurisdiction. And you could be assured that your probation officer will know of any driving infractions, no driver's license, no insurance, it doesn't matter what it is. It violates the law, and you go to prison.

"And I tell you these things, Ms. Ross, I don't intend to be threatening or intimidating, but I just want to make sure that you understand that from this point going forward there are some fairly serious consequences to pay if you violate the law any further.

"And the way I frame that—and it will be noted in some of the documents that I'll give you a copy of. The way I frame that is just zero tolerance with no exceptions for any probation violations of any sort."

But approximately a month later, the State moved to revoke Ross' probation because Ross had admitted her consumption of alcohol and marijuana and had failed to attend her substance abuse treatment program on five dates.

At the revocation hearing, Ross stipulated to the alleged violations and requested the reinstatement of her probation. Although the State advocated for the imposition of Ross' underlying prison sentence, the district court revoked and reinstated Ross' probation with the added condition that she enter and successfully complete the Community Corrections Residential Program. The district judge expressly informed Ross that she would not receive such leniency again, stating:

> "And I want to just tell you now, that zero tolerance with no exceptions requirement . . . still applies. And I can promise you that it will not be tolerated. And if there is a second visit that we have on a probation violation, you can just expect to go to prison. Do not pass go. Do not collect $200. You go straight to prison—period."

A little over a year later, Ross filed a pro se motion seeking to be released from probation because all stipulations had been met. The district court denied Ross' request because it was premature. The district judge indicated, however, that he might be "more amenable to considering a request for termination" after Ross had successfully completed 2 years of her probationary period. Before that 2-year period passed, the State filed a second motion to revoke Ross' probation because she had tested positive for marijuana and alcohol.

At the revocation hearing, Ross stipulated to the alleged violation but urged the district court either to reinstate her probation or to impose a graduated sanction because she had successfully completed all of the conditions of her probation except "the don't use substances provision." Ross claimed that her relapse occurred because depression and anxiety had gotten the best of her, as she was grieving the loss of her son, and her other children had been taken to Oklahoma. Both the State and Ross' intensive supervision officer recommended revocation because, according to the State, any other disposition would jeopardize public safety and would not serve Ross' welfare, as she still continued to turn to substance abuse in stressful situations.

3

After considering the parties' arguments, the district judge found that Ross' continued substance abuse was "a community safety issue," and he revoked Ross' probation and ordered her to serve a modified prison sentence of 24 months. Ross timely appealed.

*Did the district court make the requisite particularized findings?*

Ross contends that the district judge erred by bypassing the intermediate nonprison sanctions set forth in K.S.A. 2015 Supp. 22-3716(c) because he did not make the requisite particularized findings for such an action.

We review issues involving a district court's compliance with the mandates of that statute de novo. See *State v. Riojas*, 288 Kan. 379, Syl. ¶ 7, 204 P.3d 578 (2009).

*The statutory requirements*

Effective July 1, 2013, our legislature somewhat limited a district court's discretion with respect to sanctioning an offender for a probation violation by enacting several amendments to K.S.A. 2015 Supp. 22-3716 with the passage of House Bill 2170. See L. 2013, ch. 76, sec. 5. Compare K.S.A. 2012 Supp. 22-3716(b) with K.S.A. 2013 Supp. 22-3716(c). By and large, K.S.A. 2015 Supp. 22-3716 instructs district courts to impose a series of graduated sanctions upon finding that an offender originally convicted of a felony has violated a technical condition of his or her probation, assignment to community corrections, suspension of sentence, or another nonprison sanction. The sanctions range from continuation or modification of the offender's release conditions to brief periods of confinement in jail, which gradually increase depending upon the number of lesser sanctions the district court has already imposed upon the offender. See K.S.A. 2015 Supp. 22-3716(c)(1)(A)-(D).

4

A district court, however, still has discretion to bypass the intermediate sanctions and impose the offender's underlying prison sentence if the offender commits a new felony or misdemeanor or absconds from supervision. K.S.A. 2015 Supp. 22-3716(c)(8). Additionally, K.S.A. 2015 Supp. 22-3716(c)(9) authorizes district courts to bypass the intermediate sanctions "if the court finds and sets forth with particularity the reasons for finding that the safety of members of the public will be jeopardized or that the welfare of the offender will not be served by such sanction." This latter provision applies here.

When revoking probation under K.S.A. 2015 Supp. 22-3716(c)(9), the district judge must "explicitly address" how imposing an intermediate sanction would jeopardize public safety or fail to serve the defendant's welfare. *State v. McFeeters*, 52 Kan. App. 2d 45, Syl. ¶ 4, 48-49, 362 P.3d 603 (2015). "'[W]hen something is to be set forth with particularity, it must be distinct rather than general, with exactitude of detail, especially in description or stated with attention to or concern with details.' [Citation omitted.]" 52 Kan. App. 2d at 48. "Implicit findings by a court are insufficient when particularized findings are required by statute. On review, an appellate court will refrain from substituting its inferences for the district court's legally required explanations." 52 Kan. App. 2d 45, Syl. ¶ 3. In other words, the particularity requirement "requires district courts to make findings specific to individual defendants that do more than recite the defendant's violations—courts must offer some explanation for why public or personal welfare would not be served by continued probation." *State v. Jackson*, No. 113,654, 2016 WL 2609638, at *6 (Kan. App. 2016) (unpublished opinion).

Nevertheless, "the plain and unambiguous language of the statute does not require any magic words. Rather, it requires that the reasons for finding that the members of the public will be jeopardized [or the defendant's welfare will not be served] be stated with particularity. [Citation omitted.]" *State v. Davis*, No. 111,748, 2015 WL 2137195, at *3 (Kan. App.) (unpublished opinion), *rev. denied* 302 Kan. ___ (2015). Consequently, in *Davis*, our court held that while the district court may "have been better served by

including an ultimate determination using words drawn directly from the statute," it satisfied its obligations under K.S.A. 2014 Supp. 22-3716(c) when it found that it could not "'*simply wait until [Davis did] harm to an individual*.'" 2015 WL 2137195, at *3.

*The district court's findings*

The district judge explicitly found that he could bypass the probation violation sanctions statute for public safety reasons: "Well, I find that [Ross] committed the original offense under the influence. She's had two subsequent relapses and violations for consuming substances and the risk of another relapse puts the community safety at risk." He offered the following detailed explanation for his decision:

> "Well, one thing that I want to touch on that neither of the lawyers have stated, and that is when you were here back in April on your Motion to Terminate the Probation, I recall—and I have notes that bear it out—that I told you at the time good behavior can be rewarded and should be, bad behavior should not. When you filed that motion, it was just a little over a year past your one-year anniversary of the sentencing. You had a three-year probationary term from the date of sentencing. So I denied your motion back in April, but I made a statement and a commitment. And I think any of the lawyers here can tell you I generally stick with my commitments when I say something. Do you remember what I told you?
>
> . . . .
>
> "I told you if you went two full years without committing a probation violation, or any further probation violations, I would then consider terminating your probation early. Just a little over a year was not sufficient time, from my perspective, given the fact that you had already had one probation violation.
>
> "The thing that troubles me is the fact that—I understand the cycle of addiction and alcoholism. I have not lived that, but I have dealt with enough people that have that I think I have a pretty good understanding of it. And that is that relapses are not uncommon. They happen probably—I can't give a percentage, but a very high percentage of cases that people become addicted or become alcoholics. Relapses happen all the time. On the other hand, there's people who can go through the process without a relapse.

6

"*Here's the thing that's troubling in your case, first and foremost is the underlying offense was one that was—that occurred while you were under the influence*.

"*Second. You have a relapse with marijuana and alcohol. And now you have a second relapse with marijuana and alcohol—the same thing that got you in trouble in the first place.*

"And I know you stand there and you probably would say, Judge, I'm not going to do this again. And I've said many times that I don't doubt the sincerity in which those statements are made. They're made to me all the time by offenders. *And when the person is standing there in front of me in an orange jumpsuit and they've been in custody for a while and they've got through the hangover and the stuff out of their system very candidly and very sincerely say, I am not going to do this again, you won't see me again. But in a very, very high percentage of cases, I know from my experience, once you take off the orange jumpsuit and you put on your street clothes and you get back out in the community and there's booze or alcohol or marijuana around, there's a high chance that you may have yet another relapse. And if you have yet another relapse, bad things can happen. And given the history that's been shown in this case, I think it is a community safety issue, from my perspective*.

"So what I'm going to do, Ms. Ross, is I am going to revoke your probation. I am going to modify the underlying sentence. And, in doing that, I'm going to reduce it. But I just want to make another statement on the record. I don't know if it'll get anywhere or not. But in 2013, the Kansas legislature modified the statute dealing with probation violators, and they allowed people to be given what's referred to as Quick Dips to two or three-day jail sanctions. And after having one or two of those Quick Dips, then there's a provision that allows the Judge to send somebody to the KDOC for a 120 days or 180 days. I can't do that because there's been no Quick Dips in this case. If I had that alternative available to me, I think it would be a good lesson for people to get a wake up call, go to prison for a few months, and then come back again and try it. I think that might provide an incentive. But, as I stated, the statute as it currently reads does not allow me to do that.

"So what I'm going to do is I'm going to impose the sentence, but I'm going to reduce it. The original sentence was 43 months. I'm going to reduce it to 24 months. And you will be given credit for any time you've spent incarcerated on this case.

"So that's going to be the judgment. And I know from your perspective you don't think it's fair. And at the same time, I try to be fair with you and every offender that I deal

7

with. And I think it is a fair outcome, given all of the underlying circumstances in this case." (Emphasis added.)

Here, as in *Davis*, the district judge's findings reflect more than an implicit determination that an intermediate sanction would jeopardize public safety. The district judge set forth with particularity how members of the public would be jeopardized by the imposition of an intermediate sanction. The district judge's statements demonstrate that intermediate sanctions would jeopardize the community because Ross had demonstrated that she could not maintain her sobriety once she was out of jail and back in the community. Accordingly, the district court did not err when it bypassed the intermediate sanctions outlined in K.S.A. 2015 Supp. 22-3716(c) and ordered Ross to serve a modified prison sentence.

*Did the district court abuse its discretion?*

Alternatively, Ross contends that even if the district judge's findings were sufficiently particular to satisfy the requirements of the statute, "[n]o reasonable person would have taken the view adopted by the district [judge] when [he] revoked [her] probation because her history of compliance while on probation demonstrated her ability to remain successful and her lack of danger to the community." According to Ross, the district judge abused his discretion because he "failed to give [her] an opportunity to fully realize the success she had demonstrated on probation, but instead incarcerated her for relapsing to her addiction, an occurrence of which [he] said [he] had 'a pretty good understanding' and which was 'not uncommon.' [Citation omitted.]"

Probation from serving a sentence is "'an act of grace by the sentencing judge and, unless otherwise required by law, is granted as a privilege and not as a matter of right.' [Citations omitted.]" *State v. Gary*, 282 Kan. 232, 237, 144 P.3d 634 (2006). A district court's decision whether to revoke a defendant's probation generally involves two distinct

8

components: (1) a factual determination as to whether the State has established a violation of one or more of the conditions of probation by a preponderance of the evidence, and (2) a discretionary determination as to whether the violation warrants revocation. See *State v. Skolaut*, 286 Kan. 219, 227, 182 P.3d 1231 (2008) (citing *Black v. Romano*, 471 U.S. 606, 611, 105 S. Ct. 2254, 85 L. Ed. 2d 636 [1985]); *State v. Gumfory*, 281 Kan. 1168, 1170, 135 P.3d 1191 (2006). Once the State has proven a violation of the conditions of probation, the disposition of the case lies within the sound discretion of the district court, as long as such discretion falls within the parameters of K.S.A. 2015 Supp. 22-3716. See K.S.A. 2015 Supp. 22-3716; *Gumfory*, 281 Kan. at 1170. A judicial action constitutes an abuse of discretion if the action (1) is arbitrary, fanciful, or unreasonable, *i.e.*, no reasonable person would have taken the view adopted by the district court; (2) is based on an error of law; or (3) is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

We find the district judge did not abuse his sound discretion when he revoked Ross' probation because, as the State argued, "[t]he record demonstrates [that Ross] was provided with several opportunities to reform her behavior[, and] she . . . failed to avail [her]self of the grace afforded [her] by the district court." In fact, the district court afforded Ross leniency in granting her probation and in allowing her to remain on probation after she violated the conditions within 1 week of her sentencing hearing. But Ross squandered her opportunity to avoid incarceration by ignoring the district judge's zero tolerance warnings and continuing to abuse the very substances which led to her underlying convictions and the death of her son. Because Ross' conduct demonstrates that she was not amenable to probation, the district court's decision was reasonable and not an abuse of discretion.

Affirmed.