NOT DESIGNATED FOR PUBLICATION

No. 122,977

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BRENDAN A. MCALISTER,
*Appellee*.

MEMORANDUM OPINION

Appeal from Lyon District Court; W. LEE FOWLER, judge. Opinion filed August 27, 2021.
Affirmed.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, for appellant.

*Carissa Brinker*, assistant county attorney, *Marc Goodman*, county attorney, and *Derek Schmidt*,
attorney general, for appellee.

Before BUSER, P.J., HILL and ISHERWOOD, JJ.

PER CURIAM: This is a direct appeal of the district court's revocation of Brendan
A. McAlister's probation and imposition of his underlying sentence for aggravated
battery. The district court found that McAlister violated his probation by refusing to
reside at an approved mental health residential facility. In addition, the district court
found McAlister posed a danger to the community if he remained on probation and, as a
result, did not impose intermediate sanctions prior to termination. McAlister filed a
timely appeal. We affirm the district court's ruling.

1

FACTUAL AND PROCEDURAL BACKGROUND

In July 2019, McAlister punched his mother twice in the face. When she fell to the floor, McAlister kicked his mother repeatedly in the face, head, and back of the neck, causing severe head injuries. She was transported to a hospital for medical treatment. McAlister was charged with aggravated battery and two counts of domestic battery.

Because of concerns raised by defense counsel during the proceedings, the district court ordered McAlister to undergo a competency evaluation. The initial evaluation by Crosswinds Counseling and Wellness in August 2019 indicated that McAlister was not competent to stand trial. A subsequent evaluation was ordered at Larned State Hospital. McAlister informed Larned staff that he had prior mental health issues including a history of psychotic symptoms and that drug and alcohol use exacerbated those symptoms. In November 2019, Larned State Hospital issued its report which determined that McAlister was competent to stand trial.

The State and McAlister entered into a plea agreement wherein McAlister agreed to plead no contest to aggravated battery, a severity level 7 person felony. For its part, the State agreed to dismiss the remaining charges, and both parties recommended imposition of a guideline sentence. The agreement also specifically provided that "[t]he Defendant agrees to remain compliant with mental health and drug treatment as a condition of probation." The district court followed the terms of the plea agreement and, in February 2020, found McAlister guilty.

In April 2020, the district court sentenced McAlister to an underlying term of 21 months in prison and 12 months postrelease supervision with probation granted for 24 months. As conditions of his probation, the court ordered McAlister to comply with all mental health treatment, remain medication compliant, and stay at a residential mental health facililty approved by his intensive supervision officer (ISO). The court also

2

imposed a 60-day term in the county jail as a condition of probation, with release from incarceration as soon as there was an opening at the residential facility approved by the ISO. The district court stated it wanted McAlister to be released to the approved facility as soon as possible.

About a month later, the State moved to revoke McAlister's probation. McAlister's ISO, Angela Childears, asserted in an affidavit that McAlister had violated his probation by refusing her directive to reside at Evergreen, a structured residential facility which provided mental health services. McAlister refused to go to Evergreen and stated he preferred to remain in jail.

An evidentiary hearing was held on the probation revocation motion. Childears testified that it was important for McAlister to live in a stable, structured group home geared towards mental health services and to stay compliant with his medication. She testified that Evergreen was a group home designed for individuals with severe persistent mental illness. According to Childears, Evergreen provided "routine, daily structure, groups, medication compliance, [and] daily living skills in order for them to be successful within the community." She testified there were no other residences she would approve because, given McAlister's history and his aggravated battery conviction, "he very much needs that structure and stability for the safety of himself and the community." According to Childears, she did not believe McAlister would be successful on probation without residing at the facility.

Childears testified that McAlister had been accepted into Evergreen, but that Evergreen required its residents to be "willing participants." McAlister refused to live at Evergreen because he believed it was for people with more severe mental illnesses than his mental health issues. Childears testified that McAlister would not acknowledge the extent of his mental illness and he was "very unwilling to meet the probation requirements."

3

McAlister testified on his own behalf at the hearing. He stated that he would not reside at Evergreen because, "I'm not mentally ill."

The State argued for revocation of McAlister's probation. In response, defense counsel asked the district court to consider a 60-day sanction or a nonprison sanction so that McAlister could obtain mental health services and remain compliant with his medication or participate in a drug treatment program.

At the conclusion of the June 2020 hearing, the district court found that McAlister violated his probation by failing to comply with the mental health treatment recommended by his ISO—including staying at an approved mental health facility. The district court found that because of McAlister's refusal, he could not stay at Evergreen. Consequently, there was no suitable mental health treatment program available for him.

The district court noted that McAlister's crime of aggravated battery was a felony of serious concern because it involved injury to another person. The district court stated that McAlister was well-known to the court and had been screened for drug court previously but was not admitted because he could not comply with the conditions of the program due to his mental illness. The district court found that McAlister's mental illness prevented him from complying with the terms and conditions of probation. Concluding that McAlister posed a danger to the community, the district court revoked McAlister's probation and imposed the underlying prison sentence.

The district judge stated:

"Because this is a person felony conviction and because it does involve injury to others, the Court also has to look at what is in the best interest of society as opposed to Mr. McAlister because it involves a crime against a person. I have determined that based upon the evidence here today and because of the risk to the community because of his

4

escalating conviction, previous drug convictions and now to a person felony, that the appropriate decision for the Court today is to revoke his probation and require that he serve the sentence."

The district court recommended McAlister for evaluation and treatment at the Larned State Security Hospital.

McAlister appealed. In February 2021, the State filed a notice of change in custodial status indicating McAlister had been released from custody and was on postrelease supervision.

SUFFICIENCY OF EVIDENCE THAT MCALISTER VIOLATED HIS PROBATION

On appeal, McAlister contends the State failed to prove by a preponderance of evidence that he violated the terms of his probation. McAlister asserts there was no evidence he violated his probation "by expressing unwillingness to go to Evergreen." On the contrary, McAlister claims he "still had over a month to consider appropriate living situations and to agree to reside at Evergreen." McAlister concludes: "At most, the State proved the ISO's belief that Mr. McAlister might violate his probation at some future date."

At the probation revocation hearing, the State must establish that the probationer violated the terms of probation by a preponderance of the evidence—or that the violation is more probably true than not true. *State v. Lloyd*, 52 Kan. App. 2d 780, 782, 375 P.3d 1013 (2016). On appeal, the State cites the testimony of Childears and McAlister, himself, to argue that it "proved by a preponderance of evidence that the defendant was in violation of his probation conditions by refusing to reside at the residence approved by his ISO."

A district court's decision to revoke probation involves two steps. First, there must be a factual determination that the probationer has violated a condition of probation. Second, the district court makes a discretionary determination on the appropriate disposition. *State v. Skolaut*, 286 Kan. 219, Syl. ¶ 4, 182 P.3d 1231 (2008). On appeal, we review the district court's factual findings for substantial competent evidence. *State v. Inkelaar*, 38 Kan. App. 2d 312, 315, 164 P.3d 844 (2007).

One of the conditions of McAlister's probation was that he obtain mental health treatment which included staying at a residential facility approved by his ISO. Childears testified the only residence she would approve was Evergreen "[b]ecause I feel [based on] his history and his crime that he's been convicted of he very much needs that structure and stability for the safety of himself and the community." According to Childears, McAlister was screened and accepted by the Evergreen staff, but he was unwilling to reside there. At a team meeting with Evergreen staff, Childers and the staff attempted to persuade McAlister about the benefits of that facility. But Childears testified that McAlister stated he preferred to remain in jail. A subsequent meeting concluded with the same result. According to Childears, "McAlister did not like the restrictions of Evergreen and preferred to live different places and felt like [Evergreen] should be more appropriate for people with more severe mental illness."

McAlister testified on his own behalf that he had reasons to not reside at Evergreen. In particular, McAlister did not believe he was mentally ill. He testified that he would go to another facility or attend drug rehabilitation, but he reaffirmed that he would not reside at Evergreen. It should be noted that, in addition to his probation conditions, the plea agreement specifically provided that "[t]he defendant agrees to remain compliant with mental health and drug treatment as a condition of probation."

McAlister's argument that he could not have violated his probation yet because he was still serving the 60-day jail sanction is not persuasive. At sentencing, the district

6

court made clear that it wanted McAlister released from jail as soon as his ISO located a group home that, in her opinion, was suitable to address McAlister's mental health issues. McAlister's probation conditions required that he only reside in a residential facility approved by his ISO, in addition to complying with other mental health treatment recommendations. Childears determined that Evergreen was a suitable facility and directed McAlister to reside there to no avail.

Based on the testimony of Childears and McAlister, we hold there was substantial competent evidence to support the district court's finding that McAlister violated his probation by refusing to reside at Evergreen as directed by his ISO.

REVOCATION OF PROBATION BASED ON JEOPARDY TO PUBLIC SAFETY

For his second issue on appeal, McAlister contends the district court erred by failing to make particularized findings showing how remaining on probation would not serve McAlister's welfare or pose a danger to the community Additionally, McAlister claims that no reasonable person would agree with the court's decision to revoke probation because he had not been given an opportunity to succeed while on probation and other treatment options had not been explored.

Once a probation violation has been established, the district court's decision to revoke the offender's probation and impose the underlying sentence is discretionary unless otherwise limited by statute. See *State v. Dooley*, 308 Kan. 641, 647, 423 P.3d 469 (2018). The district court's decision to revoke a defendant's probation and order the defendant to serve the underlying sentence must be exercised within the statutory framework of K.S.A. 2019 Supp. 22-3716.

A judicial action constitutes an abuse of discretion if the action (1) is unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. The party

alleging the abuse of discretion bears the burden of proof. *State v. Thomas*, 307 Kan. 733, 739, 415 P.3d 430 (2018). The judicial action is unreasonable when no reasonable person would have taken the same action. *State v. Gumfory*, 281 Kan. 1168, 1170, 135 P.3d 1191 (2006).

K.S.A. 2019 Supp. 22-3716(c) limits the court's discretion in sanctioning a felony probation violator. The statute provides that a sentencing court should impose a series of intermediate, graduated sanctions before ordering a probation violator to serve his or her underlying sentence, unless certain exceptions apply. For example, the district court need not impose any intermediate sanction if the offender "commits a new felony or misdemeanor while the offender is on probation" or the court "finds and sets forth with particularity the reasons for finding that the safety of members of the public will be jeopardized or that the welfare of the offender will not be served by such sanction." K.S.A. 2019 Supp. 22-3716(c)(7)(A), (C).

If a district court wishes to bypass intermediate sanctions because the safety of the public will be jeopardized or the welfare of the offender will not be served by imposing sanctions, it must make findings that are "'distinct rather than general, with exactitude of detail, especially in description or stated with attention to or concern with details.'" *Dooley*, 308 Kan. at 652. To rely on this exception, the district court must explain how the safety of the members of the public will be jeopardized if the offender remains on probation or how the offender's welfare will not be served by imposition of an intermediate sanction. *State v. McFeeters*, 52 Kan. App. 2d 45, 49, 362 P.3d 603 (2015); see also *State v. Clapp*, 308 Kan. 976, 990-91, 425 P.3d 605 (2018); *State v. Duran*, 56 Kan. App. 2d 1268, 1275-76, 445 P.3d 761 (2019), *rev. denied* 312 Kan. 895 (2020).

Returning to the present case, as detailed in the factual section of this opinion, the district court explained with particularity why McAlister posed a safety risk to the community: he had committed the violent crime of aggravated battery, injuring his

mother; he had a long and escalating criminal history; his mental illness prevented him from complying with the terms of his probation; and there was no treatment program for his mental illness available through probation because McAlister refused to comply with the directives of his ISO. Given these particularized findings, we have no hesitancy in holding that the district court did not err in applying the public safety exception of K.S.A. 2019 Supp. 22-3716(c).

Finally, we also hold that a reasonable person could agree with the district court's decision to revoke McAlister's probation. McAlister needed ongoing mental health treatment but was unable to obtain that treatment on probation because he refused to acknowledge the extent of his mental illness or the structured intensive treatment that his ISO determined was necessary. McAlister's refusal to comply with this condition of probation meant that he posed a significant public safety risk to the community. As the Larned State Hospital competency evaluation indicated: "[McAlister] has demonstrated a reckless disregard for his safety and the safety of others. In addition, Mr. McAlister has demonstrated a lack of remorse as indicated by being indifferent to having hurt others." Given the substantial evidence presented at the probation revocation hearing, McAlister has failed to show an abuse of discretion by the district court.

Affirmed.