NOT DESIGNATED FOR PUBLICATION

No. 114,769

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MICHAEL ALAN METCALFE-STURM,
*Appellant*.

MEMORANDUM OPINION

Appeal from Lyon District Court; W. LEE FOWLER, judge. Opinion filed July 29, 2016. Affirmed.

Submitted for summary disposition pursuant to K.S.A. 2015 Supp. 21-6820(g) and (h).

Before GARDNER, P.J., BUSER and STANDRIDGE, JJ.

*Per Curiam*:  Michael Alan Metcalfe-Sturm contends the district court abused its discretion when it revoked his probation. Metcalfe-Sturm moved for summary disposition pursuant to Supreme Court Rule 7.041A (2015 Kan. Ct. R. Annot. 67), and the State did not object. This court granted leave to consider the appeal without briefing. Based upon our thorough review of the record, we affirm the district court's decision.

In keeping with a plea agreement, Metcalfe-Sturm pled no contest to two counts of unlawful voluntary sexual relations, severity level 8 person felonies, in violation of K.S.A. 2015 Supp. 21-5507(a)(1)(A). On July 9, 2014, the district court sentenced Metcalfe-Sturm to 18 months' probation with an underlying prison term of 20 months.

1

On January 13, 2015, the State moved to revoke Metcalfe-Sturm's probation. According to Beverly Hilbish, Metcalfe-Sturm's intensive supervision officer (ISO), Metcalfe-Sturm violated his probation by (1) receiving a ticket for speeding/driving while suspended on September 29, 2014, and for criminal trespass on January 3, 2015; (2) submitting two diluted urinalyses and two specimens which tested positive for alcohol, and (3) failing to report as directed. Shortly thereafter, the State amended its motion to include additional violations, obstructing law enforcement by providing a false name, absconding, and admitting to the consumption of beer and whiskey.

During the revocation hearing on February 26, 2015, Metcalfe-Sturm stipulated to the alleged violations. The State and Metcalfe-Sturm's ISO both argued that he was a public safety risk who was no longer amenable to probation. They noted that Metcalfe-Sturm had already voluntarily served two 48-hour jail sanctions, a 5-day jail sanction, and two 7-day jail sanctions. The district court, however, revoked, reinstated, and extended Metcalfe-Sturm's probation for 18 months with the imposition of a 180-day jail sanction.

About 3 months later, the State again moved to revoke Metcalfe-Sturm's probation. The State alleged that during his 180-day term at the Norton Correctional Facility, Special Agent Supervisor Terry Smothers discovered that with the assistance of Metcalfe-Sturm's mother and the victim's grandmother, Metcalfe-Sturm had been maintaining ongoing contact with the victim and her family in direct violation of the district court's no contact order and despite Smothers' numerous warnings to stop the contacts. Metcalfe-Sturm was subsequently transferred to the Lyon County Jail pending his revocation hearing, and shortly thereafter, the State amended its motion to revoke to include the fact that Metcalfe-Sturm was continuing to have phone and Skype contact with the victim.

2

The district court held a revocation hearing on June 15, 2015, during which it considered testimony from Metcalfe-Sturm, Metcalfe-Sturm's victim, Smothers, Hilbish, and Cherie Crisp (the victim's aunt), who notified community corrections of Metcalfe-Sturm's contact with the victim. Notably, Hilbish testified that she did not believe probation was a suitable option for Metcalfe-Sturm stating, "It's my recommendation the Court revoke [Metcalfe-Sturm's] probation and have him serve his underlying sentence. If he can't be compliant in the most-structured environment, it's not likely that he would be successful on probation." For his part, Metcalfe-Sturm requested reinstatement. Both he and the victim testified they were unaware of the no contact order until recently and the order was unreasonable because they had a child together.

After considering the parties' arguments, the district court found that Metcalfe-Sturm was no longer a suitable candidate for probation. Accordingly, the district court denied Metcalfe-Sturm's request for reinstatement and ordered him to serve the underlying sentence. The district judge explained:

> "[Mr. Metcalfe-Sturm] did know that [a no-contact] order existed because it was announced from the bench on July 9th, when the sentence was imposed. I also note that it's also included in the probation documents that are initialed by [Metcalfe-Sturm]. . . . And, then again, [in] May, I think around the 15th of this year, the officer from the Norton Correctional Facility also told Mr. Metcalfe[-Sturm], 'No more contact.' . . . So, certainly, he's in violation of the probation by that continued contact over the course of history in this case.
>
> "I'm a little bit perplexed by the defense allegation that—well, even if there was contact, it's minimal, it's inconsequential because we're talking about the child and some other things. . . . [B]ut we have to remember—and it's kind of been glossed over—that this was a contact with a child who was 15 years old. Now, obviously, she was younger when there was a sexual relationship going on. In any event, any contact is inappropriate because we're reinforcing the illegal contact that occurred that resulted in Mr. Metcalfe[-Sturm's] convictions in these cases.

"So, where do we go from here? So I look at—I mean, we have the violation, then I've got to decide what the appropriate disposition is in this case. And I've looked at the probation history. We talked about it here today. Evidence was presented on it, about the different violations we've had in this case. It looks like five or six violations prior to the 180-day sanction. There was even a period of time when Mr. Metcalfe[-Sturm] absconded and there was a warrant outstanding for a period of time trying to find him because he was not reporting or complying with the terms and conditions of probation. . . . He—obviously, the last—there was a violation [that] occurred while he was on a JRI, and then subsequent[ly], when he was brought back, a continued violation of contact. . . . So, I will revoke the probation, remand him to the custody of the secretary of corrections to serve the balance of the sentence."

On appeal, Metcalfe-Sturm contends, without elaboration, that the district court abused its discretion "in revoking [his] probation and imposing a prison sentence."

Our standards of review provide that a district court's decision whether to revoke a defendant's probation generally involves two distinct components: (1) A factual determination as to whether the State has established a violation of one or more of the conditions of probation by a preponderance of the evidence, and (2) a discretionary determination as to whether the violation warrants revocation. See *State v. Skolaut*, 286 Kan. 219, 227, 182 P.3d 1231 (2008) (citing *Black v. Romano*, 471 U.S. 606, 611, 105 S. Ct. 2254, 85 L. Ed. 2d 636 [1985]); *State v. Gumfory*, 281 Kan. 1168, 1170, 135 P.3d 1191 (2006). Once the State has proven a violation of the conditions of probation, the disposition of the case lies within the sound discretion of the district court, provided the discretion falls within the parameters of K.S.A. 2015 Supp. 22-3716, which governs revocation proceedings and instructs district courts to impose a series of intermediate sanctions where appropriate. See K.S.A. 2015 Supp. 22-3716(b) and (c); *Gumfory*, 281 Kan. at 1170. A judicial action constitutes an abuse of discretion if the action is (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact. *State v. Mosher*, 299 Kan. 1, 3, 319 P.3d 1253 (2014).

Here, the district court's discretion to revoke Metcalfe-Sturm's probation was unfettered by K.S.A. 2015 Supp. 22-3716 because Metcalfe-Sturm had already received a 180-day jail sanction for previous probation violations. See K.S.A. 2015 Supp. 22-3716(c)(1)(E) ("[I]f the violator already had a sanction imposed pursuant to subsection (c)(1)(C) [120-day jail sanction] or (c)(1)(D) [180-day jail sanction] related to the crime for which the original supervision was imposed, [the district court may revoke] the probation, assignment to a community corrections services program, suspension of sentence or nonprison sanction and requir[e] such violator to serve the sentence imposed, or any lesser sentence[.]").

After carefully reviewing the record, we are convinced the district court did not abuse its sound discretion when it revoked Metcalfe-Sturm's probation. Metcalfe-Sturm received numerous opportunities to reform his behavior and successfully complete his probation. But even while serving his 180-day jail sanction, Metcalfe-Sturm squandered his opportunity to avoid incarceration by ignoring the no contact order and maintaining contact with his victim. Metcalfe-Sturm's repeated inability to comply with the district court's directives demonstrates that he was not amenable to probation, and under these circumstances, it may not be said that no reasonable person would have revoked Metcalfe-Sturm's probation and ordered him to serve his underlying sentence.

Affirmed.