NOT DESIGNATED FOR PUBLICATION

No. 115,057

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ANTONIO C. DANIELS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; TERRY L. PULLMAN, judge. Opinion filed August 26, 2016. Affirmed.

Submitted for summary disposition pursuant to K.S.A. 2015 Supp. 21-6820(g) and (h).

Before PIERRON, P.J., GREEN and BUSER, JJ.

*Per Curiam*: In this appeal, Antonio C. Daniels contends the district court erred when it revoked his probation and imposed the underlying prison sentence. Daniels moved for summary disposition pursuant to Supreme Court Rule 7.041A (2015 Kan. Ct. R. Annot. 67). The State did not contest summary disposition and asked our court to affirm the district court's decision. We granted leave to consider the appeal without briefing. Based upon our thorough review of the record, we affirm the district court's decision.

In keeping with a plea agreement, Daniels pled no contest to two counts of aggravated sexual battery, severity level 5 person felonies, in violation of K.S.A. 2011

1

Supp. 21-5505(b)(1). On February 7, 2013, the district court sentenced Daniels to 36 months' probation with an underlying prison term of 77 months.

Almost 2 years later, on November 25, 2014, the State moved to revoke Daniels' probation because he failed to meet with his intensive supervision officer (ISO) as directed. During the revocation hearing on December 22, 2014, Daniels stipulated to the violation. The prosecutor and Daniels' ISO also argued that Daniels was no longer amenable to probation, noting that he had been noncompliant with the court's order for drug and alcohol treatment.

At the conclusion of the hearing, the district judge imposed a 180-day prison sanction, extended probation for 36 months, and advised Daniels that he would be "on zero tolerance from that point on for any probation violation."

About 5 months later, the State again moved to revoke Daniels' probation stating that he admitted to consuming alcohol, submitted to a breath test which was positive for alcohol, failed to begin sex offender treatment as directed, and did not pay fees. At the revocation hearing on July 2, 2015, Daniels stipulated to the violations.

Of note, Daniels' ISO advised the district court that the request for revocation of Daniels' probation was due in part to concerns for public safety.

> "[W]e believe that we've given him multiple opportunities as has the Court, and that he is no longer amenable to probation.
>
>        . . . .
>
>        ". . . He continues to drink while on probation. And . . . the fact that he does have struggles with issues of drug and alcohol in the past, we're concerned about public safety.
>
>        . . . .
>
>        ". . . Mr. Daniels has been dealing with sex offender treatment since 2013. I mean, there's been non compliance [*sic*] issues for a couple of years now."

2

The prosecutor argued that the 180-day incarceration did not positively affect Daniels' ability to stay sober and receive the necessary treatment. As a consequence, the prosecutor asked for the district court to impose imprisonment. For his part, Daniels testified on his own behalf and offered a plethora of excuses.

After listening to the arguments, the district judge stated:

"I'm going to go ahead and reinstate to Community Corrections Field Services. The allegations are that he was drinking some alcohol. That's a violation in and of itself, but I don't think it justifies sending him to prison.

"What I'm mostly concerned with is your lack of sex offender treatment when you've got sex offender violations convictions [as] the basis of this case.

"Mr. Daniels, your absolute condition of reinstatement of probation is you enter into sex offender treatment program, and I don't care if it's with [B. J. Mills of Mills Family Counseling] or somebody else, but you will enter in that program within 30 days and complete without interruption. No excuses. No interruption. Enter within 30 days, complete without interruption. . . .

. . . .

". . . Any interruption in that treatment program, the course of treatment, I'm going to consider that public safety and I will send you to prison."

Two months later, on September 1, 2015, the State again moved to revoke Daniels' probation, alleging he failed to attend sex offender treatment. The revocation hearing was held on October15, 2015. Both the State and Daniels' ISO asked the district court to revoke probation and impose the underlying sentences.

Once again, Daniels had a myriad of excuses, including that he had attempted to make arrangements with Mills Family Counseling, but Mr. Mills never responded to Daniels and he also could not afford the $30 fee per sex offender treatment class. The district court continued the revocation hearing to receive evidence from Mr. Mills.

3

The hearing was reconvened on October 22, 2015. At that time, the district court indicated that Mr. Mills advised that group sex offender treatment classes were $30 each, but Daniels' group classes were reduced from six per month down to two per month and Daniels only attended once. Mr. Mills also stated that Daniels had told him he "does not believe he needs treatment."

The district court found that Daniels was no longer a suitable candidate for probation. Accordingly, the district court denied Daniels' request for reinstatement and ordered him to serve a modified sentence of 50 months' imprisonment. The district judge explained:

> "I'm going to find the nature of your convictions, each being aggravated sexual battery, two separate counts, resulted in my order that you become engaged in sex offender treatment. You haven't done so. You started back in 2013. Then you got kicked out of that program for noncompliance. You were ordered to go again. The consequences were clearly explained to you. You haven't gone. . . . [B]ut the underlying convictions re— reaffirm to me the need for treatment. I find that that is a threat to public safety."

On appeal, Daniels contends the district court erred "in revoking his probation and imposing the underlying prison sentence."

Our standards of review provide that a district court's decision whether to revoke a defendant's probation generally involves two distinct components: (1) a factual determination as to whether the State has established a violation of one or more of the conditions of probation by a preponderance of the evidence, and (2) a discretionary determination as to whether the violation warrants revocation. See *State v. Skolaut*, 286 Kan. 219, 227, 182 P.3d 1231 (2008) (quoting *Black v. Romano*, 471 U.S. 606, 611, 105 S. Ct. 2254, 85 L. Ed. 2d 636 [1985]); *State v. Gumfory*, 281 Kan. 1168, 1170, 135 P.3d 1191 (2006).

Once the State has proven a violation of the conditions of probation, the disposition of the case lies within the sound discretion of the district court, as long as such discretion falls within the parameters of K.S.A. 2015 Supp. 22-3716, which governs revocation proceedings and instructs district courts to impose a series of intermediate sanctions where appropriate. See K.S.A. 2015 Supp. 22-3716; *Gumfory*, 281 Kan. at 1170. A judicial action constitutes an abuse of discretion if the action is (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact. *State v. Mosher*, 299 Kan. 1, 3, 319 P.3d 1253 (2014).

After carefully reviewing the record, we are convinced the district court did not err when it revoked Daniels' probation. Daniels received numerous opportunities to reform his behavior and successfully complete his probation. His repeated inability to comply with the district court's directives demonstrates that he was not amenable to probation. Of special concern to public safety, given the nature of Daniels' convictions, is his failure to attend and successfully complete sex offender treatment classes. Under these circumstances, we find no abuse of judicial discretion by the district court in revoking Daniels' probation and imposing the modified sentence of 50 months' imprisonment.

Affirmed.