NOT DESIGNATED FOR PUBLICATION

No. 125,826

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BRIAN CURTIS JESSE,
*Appellant*.


MEMORANDUM OPINION

Appeal from Shawnee District Court; BRETT A. WATSON, judge. Submitted without oral argument. Opinion filed January 19, 2024. Affirmed.

*Patrick H. Dunn*, of Kansas Appellate Defender Office, for appellant.

*Jodi Litfin*, deputy district attorney, *Michael Kagay*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.


Before ARNOLD-BURGER, C.J., ATCHESON, J., and TIMOTHY G. LAHEY, S.J.


ARNOLD-BURGER, C.J.: Brian Curtis Jesse appeals the district court's decision to revoke his probation and impose the underlying sentence. First, he contests the conclusion that he violated probation by committing the offense of interference with law enforcement. Second, he argues that his underlying prison sentence violates equal protection principles. After reviewing the issues presented, we affirm the district court's decision to revoke Jesse's probation and impose the underlying sentence.

1

Jesse agreed to plead guilty in Shawnee County to one felony count of possession of less than one gram of methamphetamine with the intent to distribute. The plea agreement anticipated that his criminal history would be an E, which would place Jesse in a border box on the sentencing grid. The State agreed not to oppose border box findings if Jesse could produce evidence to support such findings. The district court accepted Jesse's plea and ordered a presentence investigation report (PSI).

The PSI report reflected that Jesse had a criminal history score of C, because of a prior person felony conviction for attempted aggravated burglary in 2015. Jesse moved for a downward dispositional or durational departure. He argued in part that the age and nature of his 2015 attempted aggravated burglary conviction justified a departure because legislative changes in 2016 made it so that his underlying conduct—shoplifting from a Wal-Mart after being banned from the store—would no longer be considered aggravated burglary under current law. See K.S.A. 2016 Supp. 21-5807; L. 2016, ch. 90, § 3 (amending definition of burglary to exclude "entering into or remaining in a retail or commercial premises at any time that it is open to the public after having received a personal communication from the owner or manager of such premises not to enter such premises"). To support this point Jesse included a copy of the complaint, which showed a charge in 2014 for aggravated burglary based on an alleged shoplifting at Walmart after he had been banned, as described in his motion.

The district court ultimately granted Jesse's motion for a dispositional departure, imposing an underlying 42-month prison sentence based on his C criminal history score, suspended for an 18-month probation term. The district court explained that the "strongest reason" to grant a departure was that his prior conviction would have been charged differently under current law. The district court also stated it would authorize the transfer of Jesse's probation to Clay County because Jesse resided there.

Just three months later, the State moved to revoke Jesse's probation, alleging he had failed to report to his probation officer and that he had committed a new felony offense of interference with law enforcement. At the hearing on the motion, the State called several witnesses and Jesse testified on his own behalf.

As to Jesse's alleged failure to report, his probation officer testified that she was assigned to Jesse's case on the day of sentencing. Jesse did not report as required after sentencing, so she sent him a letter to his address in Clay Center, directing him to report in Shawnee County on June 1, 2022. She received no response, but Jesse met with her in person on the required date—a clear indication that he had received the letter. She explained the standard terms of probation and directed him to return a week later to complete an assessment, but Jesse failed to report as directed. She sent another letter to Jesse's address in Clay Center on June 20, 2022, directing him to report on June 27, 2022. She had no further contact with Jesse after that. According to her notes, Jesse's probation did not include a transfer, but he did set a goal "that he needs to get out of Clay Center." She had no record of a transfer of probation to Clay County but said she usually tells her probationers they must report to her before any transfer and that some counties require completion of a risk assessment for a transfer.

As to the interference with law enforcement charge, Clay Center Police Chief Bill Robinson testified that he received a tip on July 20, 2022, that someone resembling Cade Schultz—who had an active felony arrest warrant—had ridden his motorcycle into the garage at Jesse's residence. Robinson went there and knocked on the front door while a deputy kept watch at the back door. Two young children answered the door and responded, "Yes" when Chief Robinson asked if Schultz was inside. Robinson asked if he could speak to Schultz and the children again responded, "Yes" before closing the door.

After waiting a bit, Robinson knocked on the door again and Jesse answered. Robinson explained to Jesse that he had received a tip about Schultz and that the children

3

had just said Schultz was inside. Jesse responded that Schultz and his girlfriend had been there earlier but left before Robinson arrived. Robinson clarified to Jesse that he believed he had probable cause to get a warrant to search the house, so it would be a felony if Jesse was discovered harboring a fugitive of a felony arrest warrant. Robinson said he told Jesse to send Schultz out or they would obtain a search warrant. Jesse said he understood and went back inside, closing the door.

Robinson called for additional officers to surround the house, while he went back to his office to apply for a search warrant. Once the warrant was granted, he returned to Jesse's house. As he was walking up to the house, Robinson heard officers yelling that Schultz had exited the house and was running. After apprehending Schultz, the officers arrested Jesse for interference with law enforcement.

Jesse admitted that he last met with his probation officer on June 1, 2022, saying he had no further contact with her after that meeting because he believed his probation was being transferred to Clay County. Jesse denied receiving any other letters after the June 1 meeting. Jesse said he tried to call his probation officer, but she never answered. He did not report in Shawnee County due to not having a valid driver's license to transport himself from Clay Center. Jesse testified that he did not know Schultz was still present when he first spoke with Robinson and only found out after the conversation. Jesse did not send Schultz outside or tell the officers because Schultz "wouldn't let [him] go outside."

At the end of the hearing, the district court found, based on the evidence presented, that Jesse had violated his probation by failing to report and remain law abiding. In particular, the district court found Jesse's testimony lacked credibility, including both in his statements that he believed his probation was being transferred to Clay County and that he was unaware of Schultz' presence when he first spoke to Robinson. The district court found it was "more likely to believe that the defendant was

4

aware of that fact, and closed the door, misinformed the law enforcement officers about [Schultz'] presence in the house for the specific purpose of thwarting the execution of service of process."

Jesse opposed revocation of probation, but recognized that the district court could do so and order him to serve his underlying sentence without imposing sanctions because he had received a departure sentence. The district court revoked Jesse's probation and ordered him to serve the underlying prison sentence, based on the two established probation violations.

Jesse timely appeals.

ANALYSIS

THE DISTRICT COURT DID NOT ERR IN REVOKING JESSE'S PROBATION

Typically, the procedure for revoking a defendant's probation requires two distinct inquiries by the district court: (1) a factual determination that the offender violated a condition of probation; and (2) a discretionary determination of the appropriate disposition given the established violation. *State v. Horton*, 308 Kan. 757, 760-61, 423 P.3d 548 (2018) (citing *State v. Skolaut*, 286 Kan. 219, 227-28, 182 P.3d 1231 [2008]).

Under the first step, the State must establish a probation violation by a preponderance of the evidence. *State v. Inkelaar*, 38 Kan. App. 2d 312, 315, 164 P.3d 844 (2007). "A preponderance of the evidence is established when the evidence demonstrates a fact is more probably true than not true." 38 Kan. App. 2d at 315. Appellate courts review a district court's factual findings for substantial competent evidence and then determine de novo whether those findings support the district court's legal conclusions. *State v. Weber*, 297 Kan. 805, 816, 304 P.3d 1262 (2013). Substantial

5

competent evidence is legal and relevant evidence that a reasonable person could accept as adequate to support a conclusion. *State v. May*, 293 Kan. 858, 862, 269 P.3d 1260 (2012). When reviewing for substantial competent evidence, appellate courts do not reweigh the evidence or assess the credibility of witnesses. *State v. Combs*, 280 Kan. 45, 50, 118 P.3d 1259 (2005).

Once a probation violation has been established, the appropriate disposition rests within the district court's sound discretion unless an intermediate sanction is statutorily required. *State v. Tafolla*, 315 Kan. 324, 328, 508 P.3d 351 (2022); see K.S.A. 2022 Supp. 22-3716(b) and (c) (requiring graduated sanctions before revocation in certain circumstances). Judicial discretion is abused when its decision is (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact. S*tate v. Ingham*, 308 Kan. 1466, 1469, 430 P.3d 931 (2018). Jesse bears the burden of showing an abuse of discretion. See *State v. Thomas*, 307 Kan. 733, 739, 415 P.3d 430 (2018). It is not disputed that an intermediate sanction was not required here because Jesse was on probation due to a dispositional departure by the sentencing judge. K.S.A. 2022 Supp. 22-3716(c)(7)(B).

Here, the district court found Jesse violated his probation in two ways: (1) by failing to report to his probation officer; and (2) by committing the offense of interference with law enforcement. Although Jesse recognizes both violations in his brief, he only challenges the district court's conclusion that he violated probation by not remaining law abiding. Kansas appellate courts have long followed the rule that issues not briefed by an appellant are considered waived or abandoned. *State v. Davis*, 313 Kan. 244, 248, 485 P.3d 174 (2021). Likewise, points raised incidentally in a brief and not argued in it are seen as abandoned. *State v. Meggerson*, 312 Kan. 238, 246, 474 P.3d 761 (2020).

Since Jesse does not challenge the district court's finding that he violated probation by failing to report, we find he has abandoned that challenge. So we are left with whether

6

the district court would have revoked Jesse's probation had the failure to report been the only violation. If so, the district court's unchallenged finding is dispositive. See *Quinn v. State,* 317 Kan. 624, 627, 537 P. 3d 94 (2023) (where unchallenged ground for court's decision was dispositive, no need to address other grounds).

We have no problem concluding that Jesse's failure to report and to pursue rehabilitation would have resulted in the revocation of his probation even absent the alleged failure to remain law abiding. The court discussed at length the fact that Jesse's probation was the result of a dispositional departure—a departure that was granted due to the court's belief that Jesse warranted an opportunity to be free and pursue rehabilitation. Although the district court was specific in its finding that Jesse's failure to complete drug treatment was not the basis for the revocation, the court found it relevant that Jesse had done nothing to even pursue it. The court noted that Jesse had failed to follow through with this foundational promise he made to the court to convince it to grant a departure sentence—an indication that he was no longer amenable to probation, and he should serve his underlying sentence.

Accordingly, we affirm the district court's decision to revoke Jesse's probation.

### JESSE CANNOT USE A MOTION TO CORRECT AN ILLEGAL SENTENCE TO ARGUE HIS UNDERLYING SENTENCE IS UNCONSTITUTIONAL

Although he combines their discussion, Jesse raises two arguments here: (1) The revised Kansas Sentencing Guidelines Act (KSGA), K.S.A. 2022 Supp. 21-6801 et seq., is unconstitutional because it violates his equal protection rights under the Fourteenth Amendment to the United States Constitution and sections one and two of the Kansas Constitution Bill of Rights; and (2) his sentence is illegal because it does not conform to the KSGA.

7

Yet Jesse acknowledges that the correct application of the KSGA requires designating his 2015 attempted aggravated burglary conviction as a person felony since the crime was designated as such at the time of his current conviction. See *State v. Terrell*, 315 Kan. 68, Syl. ¶ 2, 504 P.3d 405 (2022) ("Under the Kansas Sentencing Guidelines Act, K.S.A. 2020 Supp. 21-6801 et seq., all prior convictions, whether out-of-state, pre-guidelines, or amended post-guidelines, are to be classified as person or nonperson as of the time the new crime is committed."); *State v. Lyon*, 58 Kan. App. 2d 474, 492, 471 P.3d 716 (2020) (affirming designation of 2010 aggravated burglary conviction as a person felony since the crime as amended in 2016 remained a person felony). In other words, Jesse concedes the district court did not err in calculating his criminal history score under the KSGA, but he contends that if his Kansas conviction for attempted aggravated burglary had been committed in 1992 instead of 2015, he would benefit from a more lenient criminal history calculus. In that case his sentence would have been calculated based on a lower criminal history score. Because the KSGA treats him differently than people with convictions for the same crime before the KSGA's existence, Jesse claims his sentence "does not afford [him] equal protection."

This leaves Jesse solely with the argument that the KSGA is unconstitutional as it applies to his situation. But fatal to this argument is the well-established Kansas Supreme Court mandate that a criminal defendant cannot use a motion to correct illegal sentence to argue their sentence is unconstitutional. See *State v. Bryant*, 310 Kan. 920, 922-23, 453 P.3d 279 (2019) (holding that motion to correct an illegal sentence is an inappropriate vehicle to challenge the constitutionality of a sentence). Accordingly, we cannot consider his constitutional claim at this stage of the proceeding.

In sum, we affirm the district court's decision to revoke Jesse's probation and impose the underlying sentence.

Affirmed.

8

* * *

ATCHESON, J., concurring:  The Shawnee County District Court acted within its judicial discretion to revoke Defendant Brian Curtis Jesse's probation. So I concur in affirming that decision and briefly elaborate on what I understand to be our reasoning for that result.

In an evidentiary hearing, the district court found that Jesse violated the conditions of probation when he failed to report to his probation officer as required and when he committed the new crime of interference with law enforcement, a violation of K.S.A. 2022 Supp. 21-5904(a)(3), by impeding Clay Center police officers in their efforts to capture a fugitive. The district court revoked Jesse's probation and ordered him to serve his original 42-month prison sentence for possession of methamphetamine with the intent to distribute. When the district court originally sentenced Jesse, it granted him a dispositional departure from presumptive imprisonment to probation.  The district court, therefore, had the authority to order Jesse to serve the prison sentence upon a proved probation violation, bypassing lesser jail sanctions typically required for first violations. See K.S.A. 22-3716(c)(7)(B).

On appeal, Jesse does not dispute that he failed to report and, thus, concedes that probation violation. But he submits the evidence did not establish that he violated K.S.A. 2022 Supp. 21-5904. See *State v. Gumfory*, 281 Kan. 1168, 1170, 135 P.3d 1191 (2006) (State bears burden of proving probation violation by preponderance of evidence). For purposes of resolving the appeal, the majority assumes Jesse is correct in that respect and considers whether the district court would have revoked the probation for the failure to report as a stand-alone violation. Under the circumstances, that is analytically sufficient. The majority then correctly points out the district court had the statutory right to revoke Jesse's probation and to order him to serve his prison sentence. In other words, the district

9

court *could have* chosen to do so in the exercise of its judicial discretion.  But that doesn't resolve the issue.

To affirm the district court's decision, we must be able to say the district court *would have* exercised its discretion in that way based solely on Jesse's failure to report—the sort of violation commonly considered a "technical" one. See *State v. Brown*, 51 Kan. App. 2d 876, 880, 357 P.3d 296 (2015) (technical violation entails conduct contrary to conditions of probation but not otherwise unlawful); *State v. Torres*, No. 125,142, 2023 WL 6324394, at *5 (Kan. App. 2023) (unpublished opinion). So the outcome determinative question is this: Would the district court, in fact, have revoked Jesse for the technical violation? Not whether it legally could have done so.

To answer the controlling question, we must be able to reasonably conclude from the record how the district court would have exercised its judicial discretion in a factual circumstance at least somewhat different from the one it did consider. Otherwise, we are simply guessing about what the district court might have done. Appellate courts cannot deploy mere guesswork to supersede a discretionary call a district court never actually made. Cf. *State v. Herring*, 312 Kan. 192, 201, 474 P.3d 285 (2020) (Although a reviewing court "may think" it knows what a district court would have done absent a legal error, "it cannot know for sure until the lower court does the [proper] analysis."); *State v. Jackson*, No. 124,540, 2023 WL 176079, at *3 (Kan. App.) (unpublished opinion) (when district court makes legal error in exercising judicial discretion, appellate court typically should remand for further consideration), *rev. denied* 317 Kan. 846 (2023).

Here, however, we do not have to guess. In explaining its decision to revoke Jesse's probation and to send him to prison rather than extending his probation, the district court expressly relied on the failure to report and a failure to engage in drug counseling or treatment. In that context, the district court did not mention Jesse's

ostensible interference with the Clay Center police officers. We, therefore, may reasonably conclude the district court would have done exactly what it did do even in the absence of the probation violation for interference. See *State v. Wilson*, 314 Kan. 517, 524, 501 P.3d 885 (2022) (appellate court declines to infer district court would have revoked probation based on available legal grounds it "did not refer to or make findings under"). Accordingly, the record is sufficient to affirm the district court's ruling while giving full play to the analytical assumption discarding the new-crime violation.

As to Jesse's second issue, I agree that he gets no relief at this juncture on his claim that the determination of his original sentence and the underlying criminal history violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and, thus, did not conform to the Kansas sentencing guidelines. In an appeal from a probation revocation, a defendant cannot challenge the legal bases for the original sentence. *Wilkerson v. State*, 38 Kan. App. 2d 732, 734, 171 P.3d 671 (2007); *State v. Resto-Isaac*, No. 122,226, 2021 WL 2387474, at *4 (Kan. App. 2021) (unpublished opinion). If we were to construe the point as a request to correct an illegal sentence under K.S.A. 2022 Supp. 22-3504, it would fail because that statutory remedy does not cover constitutional challenges to a sentence. *State v. Bryant*, 310 Kan. 920, 922, 453 P.3d 279 (2019).